UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
   KEYU LONG, personally and
   derivatively on behalf of both J. Navi De
   One Fund, LLC, and New York
   Education Center, Inc.,

                    Plaintiffs,               **<u>REPORT AND</u>**
                                       **<u>RECOMMENDATION</u>**

            -against-               22-CV-1293 (DG) (TAM)

   SHUNHUANG ZHUANG, ACE
   CAPITAL, INC., YAN TONG, and JOHN
   DOES 1–5,

                    Defendants.
---------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

      Keyu Long, personally and derivatively on behalf of both J. Navi De One Fund,

LLC, and New York Education Center, Inc. (collectively, "Plaintiffs"), initiated this

action against Defendants Shunhuang Zhuang, also known as Shunhuang "Peter"

Zhuang, ACE Capital, Inc. ("ACE Capital"), Yan Tong, and John Does 1–5 on March 9,

2022. (*See* Complaint ("Compl."), ECF No. 1.) Plaintiffs contend that Defendant Peter

Zhuang, working through ACE Capital, together with Yan Tong and others, engaged

in, *inter alia*, fraud in violation of state law and federal racketeering activity as part of a

scheme to defraud Plaintiffs of in excess of $800,000. (*Id.* ¶¶ 1, 2, 16–52, 106–16.)

      Currently pending before the Court are Plaintiffs' motion for default judgment,

which the Honorable Diane Gujarati referred to the undersigned Magistrate Judge for a

report and recommendation, as well as Defendant Yan Tong's motion to set aside the

default and a cross-motion to vacate Plaintiffs' motion for default filed on behalf of

Defendants Shunhuang Zhuang and ACE Capital. (*See* Clerk's Entry of Default, ECF

No. 11; Pls.' Motion for Default Judgment ("Mot. for Default J."), ECF No. 12; May 23,

2022 ECF Order (referring the default motion); Defendant Tong's Motion to Set Aside Default ("Tong Mot. to Set Aside"), ECF No. 22; Defendant Zhuang & ACE Capital's Cross-Motion to Vacate ("Zhuang Cross-Mot."), ECF No. 23.)

For the reasons set forth below, this Court respectfully recommends that (1) Plaintiffs' motion for default judgment be denied; (2) Defendants' motions to vacate and set aside the default be granted; (3) the Clerk's Entry of Default be vacated and set aside; and (4) Defendants be directed to answer or otherwise respond to Plaintiffs' complaint within two weeks of the final order ruling on these motions.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court assumes general familiarity with the substance and history of the case and includes only the background relevant to the instant motions. As noted, this action was commenced on March 9, 2022. (Compl., ECF No. 1.) On March 29, 2022, Plaintiffs filed an affidavit of service indicating that service had been effected on ACE Capital by service of Harvard Business Services, Inc., as registered agent of ACE Capital on March 21, 2022. (Aff. of Service, ECF No. 6.[1]) Also on March 29, 2022, Plaintiffs filed an affidavit of service as to Defendant Shunhuang Zhuang representing that Defendant Zhuang had been served by leaving a copy of the summons and complaint with a woman described as a "doorwoman" at Defendant Zhuang's building on March 17, 2022. (Aff. of Service, ECF No. 7.) The affidavit of service further states that "[j]ust prior to being served with the above described papers, [the] doorwoman called Shunhuang 'Peter' Zhuang on the phone and was instructed by Shunhuang 'Peter' Zhuang not to allow deponent up to his apartment." (Id.) The process server represented that service

---

[1] The affidavits of service docketed at ECF numbers six and seven are both described on the docket as "Summons Returned Unexecuted," notwithstanding that each affidavit details efforts at service. (See Affs. of Service, ECF Nos. 6 & 7.)

was completed by both delivering a copy of the papers to the doorwoman and by mailing them to Defendant Zhuang at 138-35 39th Avenue, Apartment #7J, Flushing, NY 11354. (*Id.*; *see also id.* at 2 (mail receipt).) On March 30, 2022, Plaintiffs filed an affidavit of service representing that service had been effected on Defendant Yan Tong at 9 Old Pond Road, Great Neck, NY, 11023, on March 25, 2022. (Aff. of Service, ECF No. 8.)

On May 12, 2022, Plaintiffs' counsel requested a certificate of default, which the Clerk of Court entered on May 20, 2022, as to Defendants Shunhuang Zhuang, ACE Capital, and Yan Tong, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure due to Defendants' failure to appear or otherwise defend this action.[2] (Request for Certificate of Default, ECF No. 10; Clerk's Entry of Default, ECF No. 11.) Plaintiffs then moved for default judgment on May 22, 2022. (*See* Mot. for Default J., ECF No. 12.) On May 23, 2022, Judge Gujarati referred Plaintiffs' motion to the undersigned Magistrate Judge for a report and recommendation. (May 23, 2022 ECF Order.)

On May 24, 2022, the Court entered an order reiterating the need for strict procedural compliance with the Eastern District of New York's local rules concerning default motion practice and directing Plaintiffs to file proof of service on Defendants of Plaintiffs' request for the certificate of default and motion for default judgment. (May 24, 2022 ECF Order; *see generally* E.D.N.Y. Local Rule 55.2(c) (providing that default motion paperwork "shall simultaneously be mailed to the party against whom a default judgment is sought at the last known residence of such party (if an individual) or the last known business address of such party (if a person other than an individual)" and

---

[2] The Court notes that the Clerk of Court has not certified the default of John Does 1–5 (alleged associates in the RICO) as they have not been identified and served, and Plaintiffs have not moved for default against them. (*See, e.g.*, Compl., ECF No. 1, ¶¶ 1, 11, 85, 87.)

that proof of mailing must be filed with the court).) On May 25, 2022, Plaintiffs' counsel filed an affidavit of service representing that he served the request for default and the default motion on the three named Defendants by mail on May 12, 2022, and May 22, 2022, respectively. (Aff. of Service, ECF No. 14.)

Shortly thereafter, counsel for Defendants appeared. Specifically, on June 7, 2022, two attorneys entered notices of appearance, and they each promptly filed motions for an extension of time to respond to the pending default motion. (*See* Notices of Appearance, ECF Nos. 15 & 16; Mots. for Extension of Time, ECF Nos. 17 & 18.) The Court denied the motions for extension of time as moot, and directed the parties to file a joint status report providing an update about the status of the case and Plaintiffs' intentions regarding the pending default motion. (June 8, 2022 ECF Order.) In response, Plaintiffs' counsel promptly filed a letter on their behalf offering argument in support of the pending default motion and proffering facts that, counsel claims, warrant the entry of a default judgment. (Pls.' Letter, ECF No. 19.) Together with the letter, counsel included numerous text messages that, according to counsel, are between him and Defendant Zhuang, which appear to be dated from April 1 through May 13, 2022. (Ex. A, ECF No. 19, at 5–13.)

For example, in a text from counsel to Defendant Zhuang on April 1, 2022, counsel wrote as follows:

> It probably would also be easier if you and your ex-wife had an attorney. And it would much easier if Dais attorney reached out for me because we could then put all the cases on hold and do a 'work out.'

> I have to tell you Peter that unless I see something that gives me comfort that you and the Dais are really working toward resolving this situation I have to move forward.

(Ex. A, ECF No. 19, at 6.) Shortly thereafter, also on April 1, counsel sent another text that said: "Peter, Are we through discussing this? Term sheet?" In response, on April 1,

Mr. Zhuang responded: "I am getting the term sheet." (*Id.*) Thereafter, between April 1 and April 11, 2022, there was an exchange of text messages regarding a possible repayment plan, and Defendant Zhuang made a request to Plaintiffs' counsel, in a text dated April 8, 2022, regarding a stay of litigation, as follows: "Please make sure you put all the litigation on hold for now." (*Id.* at 8.) Plaintiffs' counsel responded that he "cannot put anything on hold unless and until I have cash in my hand. I don't do anything on a promise." (*Id.* at 9.) Plaintiffs' counsel further represents that, thereafter, on May 6, 2022, he sent a text to Defendant Zhuang stating as follows:

> Peter
>
> All defendants now have defaulted in the RICO case just to let you know.
>
> Of course you haven't come up with any money, though you have made countless representations.
>
> So, I move forward.

(*Id.* at 11.) According to the text messages, on May 11, Defendant Zhuang stated that he was meeting with others that evening and that they "should be able to write down the repayment agreement on paper now." (*Id.* at 12.) Plaintiffs' counsel's text response stated: "Let me perfectly clear. Until I see a signed document AND money, I cannot do anything but move forward." (*Id.* at 12.) In response, Defendant Zhuang allegedly wrote: "They have the money now and asked me to discuss and write these into an agreement. I am truly working hard to put this behind all of us. Please understand and cooperate. Thx." (*Id.* at 13.)

As noted above, on May 12, 2022, immediately after the above text exchange, Plaintiffs moved for a certificate of default, which the Clerk of Court granted on May 20, 2022. (Request for Certificate of Default, ECF No. 10; Clerk's Entry of Default, ECF No. 11.) Counsel for Defendants appeared shortly thereafter, on June 7, approximately two

weeks after Plaintiffs' counsel sent the default motion paperwork to Defendants on May 22, 2022. (*See* Aff. of Service, ECF No. 14; Notices of Appearance, ECF Nos. 15 & 16.) On July 11, 2022, the Court held a telephonic status conference, during which Plaintiffs' counsel reiterated his intention to proceed with the default motion. (July 11, 2022 ECF Minute Entry & Order.) Accordingly, the Court set a briefing schedule for Defendants to file their anticipated motions to vacate the entry of default. (*See id.*) For the reasons set forth below, the Court respectfully recommends that Plaintiffs' motion for default judgment be denied and that Defendants' motions to vacate and set aside the default be granted.

## DISCUSSION

### I.    Legal Standards

Federal Rule of Civil Procedure 55 establishes the procedures for obtaining and vacating entry of a default judgment. First, Rule 55(a) provides that the clerk must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Thereafter, a plaintiff may move for a default judgment under Rule 55(b). Following entry of a default, Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." *See Meehan v. Snow*, 652 F.2d 274, 276 n.5 (2d Cir. 1981) (per curiam) ("Entering a default pursuant to Rule 55(a) and affording a defendant an opportunity to move to vacate it pursuant to Rule 55(c) is the preferable course.").

Evaluating "good cause" under Rule 55(c) is "left to the sound discretion of a district court." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). When determining whether to relieve a party from default, courts look to three main factors: "(1) whether the default was willful; (2) whether setting aside the default would

prejudice the adversary; and (3) whether a meritorious defense is presented." *Id.* at 96; *see also Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001); *G&G Closed Cir. Events, LLC v. Lopez*, No. 21-CV-7164 (KMK), 2022 WL 633875, at *1 (S.D.N.Y. Mar. 4, 2022). "[W]hen doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96. As Judge Bianco has observed, "[t]he Court is also permitted to consider relevant equitable factors, including whether . . . the entry of default would bring about a harsh or unfair result." *Raheim v. N.Y.C. Health and Hosps. Corp.*, No. 96-CV-1045 (JFB) (CPP), 2007 WL 2363010, at *3 (E.D.N.Y. Aug. 14, 2007) (quotation marks omitted).

As a general rule, "[d]efaults are not favored, particularly when the case presents issues of fact, and doubts are to be resolved in favor of a trial on the merits." *Meehan*, 652 F.2d at 277; *see also Am. All. Ins. v. Eagle Ins.*, 92 F.3d 57, 61 (2d Cir. 1996) ("Strong public policy favors resolving disputes on the merits."); *see also Kauhsen v. Aventura Motors, Inc.*, No. 09-CV-4114, 2010 WL 2301289, at *3 (E.D.N.Y. June 7, 2010) (observing that "[d]efault judgments are generally disfavored") (citing *United States v. Cirami*, 563 F.2d 26, 33 (2d Cir. 1977)).

## II. Analysis

Defendants argue that there is good cause to set aside the entry of default here under Rule 55(c). First, Defendant Yan Tong argues that her default was not willful, that she has meritorious defenses, including a meritorious motion to dismiss the complaint for failure to state a claim, and that there is no prejudice to Plaintiffs. (*See* Tong Mem. of Law, ECF No. 22-7.) Defendants Peter Zhuang and ACE Capital argue that (1) the default should be set aside because the default was not willful, (2) Plaintiffs cannot establish prejudice based on delay, and (3) Defendants have meritorious defenses. (*See* Milos Decl. in Supp. of Zhuang Cross-Mot. and in Opp. to Mot. ("Milos Decl."), ECF

No. 23-1, at 6–13 (referring to ECF page numbering).) Balancing the *Enron Oil* factors, the Court finds that even assuming willfulness, there is good cause to grant Defendants' motions to vacate and set aside the default.

### A. Willfulness

As to willfulness, Defendant Tong does not contest that she was served but attempts to offer an explanation for her failure to hire counsel and appear in the case. Specifically, in her declaration, Defendant Tong stated that she was served on March 25, 2022, but that her "ex-husband [Defendant Zhuang] picked up [her] only copy of the Complaint" on March 27, 2022. (Tong Decl., ECF No. 22-1, ¶¶ 3, 5.) She further states that she spoke with Defendant Zhuang about the lawsuit on April 9, 2022, and that he told her that he was "resolving the issue with the Plaintiff's lawyer, and not to worry about answering the lawsuit." (*Id.* ¶¶ 6–7.) She then received a notice in the mail regarding the default on May 25, 2022, and promptly hired counsel. (*Id.* ¶¶ 8–9.)

As for Defendants Zhuang and ACE Capital, it is somewhat less clear why they did not initially respond to Plaintiffs' complaint, which was served by mail and to Mr. Zhuang's building, and to ACE Capital's registered agent, as detailed above. (*See* Affs. of Service, ECF Nos. 6 & 7.) In support of his cross-motion to vacate Plaintiffs' motion for default, Defendant Zhuang submitted a declaration in which he asserts that "[f]rom the outset, I just did not know about this case. ACE Capital Inc. also did not know about this case." (Zhuang Decl., ECF No. 23-2, ¶ 3.) Defendant Zhuang further argues that he was not properly served, that the doorwoman of his building was not authorized to accept service on his behalf, and that he did not receive anything in mail. (*Id.* ¶ 4.) Defendant Zhuang similarly contends that ACE Capital was not properly served. (*Id.* ¶ 5.)

8

Upon review of the entire record, the Court finds that there are certain facts in dispute on the question of whether Defendant Zhuang and ACE Capital were properly served and had knowledge about the lawsuit. On the one hand, if credited, the text messages submitted by Plaintiffs' counsel and Defendant Tong's representations regarding her conversations with Defendant Zhuang about the lawsuit strongly suggest that Defendant Zhuang knew there was a federal lawsuit.[3] (Ex. A, ECF No. 19, at 5–13; Tong Decl., ECF No. 22-1, ¶ 7.) In addition, Plaintiffs' counsel strenuously argues that Defendant Zhuang was well aware of the lawsuit and was properly served.[4] (*See* Maione Decl. in Opp'n to Zhuang Cross-Mot. ("Maione Decl."), ECF No. 25, ¶¶ 13–31.) On the other hand, Defendant Zhuang raises non-frivolous arguments as to whether Plaintiffs' affidavits of service conclusively establish that Defendant Zhuang was served in a manner that qualifies as legally sufficient given that service was effected on an

---

[3] It is worth noting that courts are in some disagreement about whether a "'good faith belief that an action will settle constitutes a reasonable basis for failing to interpose an answer.'" *MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 109 (E.D.N.Y. 2014) (quoting *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 246 F. Supp. 2d 231, 250 (S.D.N.Y. 2002)); *see Joe Hand Promotions, Inc. v. Capomaccio*, No. 09-CV-6161 (MAT), 2009 WL 3268558, at *3–4 (W.D.N.Y. Oct. 6, 2009) (finding default not willful where communications between the parties suggested possible settlement); *but see Labarbera v. Interstate Payroll Co.*, No. 07-CV-1183 (FB) (MDG), 2009 WL 1564381, at *2 (E.D.N.Y. June 2, 2009) (observing that choosing to ignore the litigation did not constitute good cause to set aside the entry of default). If the text messages are credited here, it appears that Defendant Zhuang was attempting to engage with Plaintiffs' counsel, which cuts both for and against him on an evaluation of willfulness. He may well have had notice of the lawsuit and knowingly failed to appear, but the record could also suggest that Zhuang held "a good faith belief that the matter would be settled without judicial intervention," which "may preclude a finding of 'willfulness.'" *MD Produce Corp.*, 304 F.R.D. at 109.

[4] Plaintiffs' counsel also argues that the record demonstrates that Mr. Zhuang perjured himself in his declaration filed in connection with these motions, and that the Court "cannot countenance" the "blatant, palpably perjurious testimony" he has submitted. (Maione Decl., ECF No. 25, ¶ 42.) Although the Court certainly does not countenance perjury, it does not at this juncture find that perjury has occurred, nor does the Court conclude that the specter of possible perjury warrants a different outcome on the instant motions.

employee of Defendant Zhuang's apartment building.[5] *See* N.Y. C.P.L.R. § 308; Fed. R. Civ. P. 4. In addition, the Court notes that Defendant Zhuang quite promptly appeared in the case after being served with the default paperwork in the manner required by our Court's local rules. In light of the conclusions, discussed below, that the second two *Enron Oil* factors strongly weigh in favor of setting aside the default here, the Court has determined that although Defendants' default in this case was almost certainly knowing, and may well have been willful, it is unnecessary to hold a hearing to answer factual questions that would be important to reach such a conclusion definitively.

Even if Defendants knew about this lawsuit, the Court finds that the overall timeline of the case weighs in Defendants' favor in an evaluation of willfulness. As noted above, this suit was initiated on March 9, 2022, and Defendants appeared within three months of the filing of the Complaint. (*See* Compl., ECF No. 1.) The Court also finds it highly significant that attorneys for all Defendants appeared in the case *within two weeks* of being served with the default paperwork that was mailed to them in accordance with Local Civil Rule 55.2. (*See* Aff. of Service, ECF No. 14 (indicating that the default paperwork was mailed on May 22, 2022); Tong Decl., ECF No. 22-1, ¶ 8 (stating that she received notice of the default in the mail on May 25, 2022); Notices of Appearance, ECF Nos. 15 & 16 (filed on June 7, 2022).) Accordingly, even if the Court were to assume *arguendo* that Defendants' failure to appear was willful, this timeline does not evidence an "egregious" evasion of this case that would support the entry of default on the basis of willfulness alone. *See S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir.

---

[5] The record is fairly strong that ACE Capital's registered agent was served. (*See* Aff. of Service, ECF No. 6 (affirming service on Harvard Business Services in the state of Delaware, as the registered agent of ACE Capital).) However, counsel for Defendants Zhuang and ACE Capital challenges whether ACE Capital was properly served and contends that the agent did not send Mr. Zhuang anything notifying him of service on ACE Capital. (Milos Decl., ECF No. 23-1, ¶ 26.) Plaintiffs' counsel contests these claims. (*See* Maione Decl., ECF No. 25, ¶¶ 13–24.)

1998) (discussing the willfulness prong and observing that, in the default context, willfulness has been interpreted "to refer to conduct that is more than merely negligent or careless"); *see also Raheim*, 2007 WL 2363010, at *4 (observing that courts should "resolve any doubt about [a defendant's] willfulness in his favor").

### B.  Prejudice

"[D]elay alone is not a sufficient basis for establishing prejudice." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983); *see also Sibley v. Choice Hotels Int'l, Inc.*, 304 F.R.D. 125, 131 (E.D.N.Y. 2015). Indeed, as the Second Circuit has observed, "to prevail on the prejudice prong a plaintiff must show 'that delay will result in the loss of evidence . . . or provide greater opportunity for fraud and collusion.'" *Swarna v. Al-Awadi*, 622 F.3d 123, 143 (2d Cir. 2010) (quoting *Davis*, 713 F.2d at 916); *Certain Underwriters at Lloyd's London v. Mr. Demolition, Inc.*, No. 20-CV-1886 (PKC) (SMG), 2020 WL 9260214, at *4 (E.D.N.Y. Dec. 28, 2020) (finding no prejudice where delay would not result in the loss of evidence or create difficulties during discovery); *Raheim*, 2007 WL 2363010, at *5.

Plaintiffs' prejudice argument is grounded on claims that Defendant Zhuang "has a habit and history of willful default" and assertions that Plaintiffs have not been repaid in years. (*See* Pls.' Mem. in Opp'n to Defs.' Cross-Mots., ECF No. 25-12, at 8–9.) But other than a delay in any potential recovery — which argument prematurely assumes that Plaintiffs' federal case will be meritorious — Plaintiffs have not identified any specific, cognizable prejudice caused by the brief delay in this case, or what prejudice will flow from Defendants' being permitted to defend this action.

Defendants argue that Plaintiffs cannot establish prejudice because of the relatively short time the case has been pending; they further argue that Plaintiffs cannot show any loss of evidence or substantive prejudice to Plaintiffs caused by Defendants' delayed appearance. (*See* Tong Mem., ECF No. 22-7, at 3; *see also* Milos Decl., ECF No.

23-1, ¶ 29 (arguing that "delay alone" is insufficient to establish prejudice).) Again, the timing here favors vacating the entry of default. As discussed above, all Defendants appeared in the case within three months of when Plaintiffs filed it and within two weeks of being served with the default motion. The litigation was not significantly delayed by Defendants' initial failure to appear and there is no indication that any evidence has been lost, that vacating the default will cause difficulties during discovery, or that there has been any other identifiable prejudice to Plaintiffs.[6]

### C. Meritorious Defenses

Finally, with respect to the existence of potentially meritorious defenses, the Court finds that Defendants have raised several such defenses to the federal case that weigh heavily in favor of setting aside the default so that this case can reach the merits. (*But see* Pls.' Mem. in Opp'n to Defs.' Cross Mots., ECF No. 25-12, at 7–8 (claiming that there is no meritorious defense and no evidence to support a defense).)

"To establish a meritorious defense, a defendant need not prove the defense conclusively." *Lloyd's London*, 2020 WL 9260214, at *4. At the same time, conclusory denials are not enough. *Enron Oil Corp.*, 10 F.3d at 98. Whether a defense is meritorious should be "measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.*; *see also Am. All. Ins.*, 92 F.3d at 61 (observing that a "meritorious defense . . . need not be ultimately persuasive at [the default] stage" and that a "'defense

---

[6] The Court notes that there was, of course, an additional period of delay following Defendants' appearance to permit time for the adjudication of the instant motions. However, this delay was caused, at least in part, by Plaintiffs, who determined to pursue the default notwithstanding Defendants' prompt appearance after Plaintiffs' counsel mailed the notice of default as required under our local civil rules. (*See* July 11, 2022 ECF Minute Entry & Order (setting briefing schedule for Defendants' anticipated motions regarding the pending default).) Although it is clearly true that Defendants' initial non-appearance triggered the default motion, the Court does not count this additional time solely against Defendants in assessing prejudice.

is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. and Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)).

In this case, Defendant Yan Tong argues that the Complaint is susceptible to a motion to dismiss under Rule 12(b)(6) because the allegations in the case sound in fraud, which must be pled with particularity under Rule 9(b), and that there are "very few factual allegations" against her in the Complaint. (*See* Tong Mem. of Law, ECF No. 22-7, at 2.) Defendant Tong further argues, as to the merits, that she has never offered her property as collateral to the Plaintiffs or had any business relationship with Plaintiffs, and that the defense of *res judicata* may apply to this action because there are multiple related lawsuits pending. (*Id.* at 3; *see also* Ex. D to Tong Mot., ECF No. 22-6 (state court docket sheets regarding related proceedings); Exs. K & L to Zhuang Cross-Mot., ECF No. 23-13 & 23-14 (state court filings).)

Defendants Zhuang and ACE Capital also request the opportunity to file a motion to dismiss, describing several factual defenses. (Milos Decl., ECF No. 23-1, ¶¶ 34, 35–50.) Additionally, Defendants Zhuang and ACE Capital contend that the federal case may be barred by *res judicata* and collateral estoppel due to pending state court litigation concerning the same notes. (*Id.* ¶¶ 36–42, 50.) Furthermore, Defendants Zhuang and ACE Capital claim that Plaintiff Keyu Long is not a party to the notes underlying the alleged fraud, that Defendant Zhuang "has paid back large portions of the loans on the notes already," and that Plaintiffs have already obtained judgments in state court that may be duplicative with the damages sought here. (*Id.* ¶¶ 38, 43–44.)

As to Defendants' intention to file motions to dismiss, the Court notes that federal jurisdiction in this case is premised on the inclusion of RICO allegations against

Defendants.[7] (*See* Compl., ECF No. 1, ¶ 1 & ¶¶ 106–16 (first cause of action, alleging

civil RICO).) All of Plaintiffs' remaining claims are based on state law. (*Id.* ¶¶ 117–23

(second cause of action, alleging misrepresentation and fraud in the inducement); *id.*

¶¶ 124–29 (third cause of action, alleging unjust enrichment); *id.* ¶¶ 130–37 (fourth

cause of action, based on equitable and promissory estoppel); *id.* ¶¶ 138–41 (fifth cause

of action, requesting, *inter alia*, imposition of a constructive trust, an equitable

accounting, and expedited discovery); *id.* ¶¶ 142–45 (sixth cause of action, alleging

prima facie fraud).)

      1. *The RICO Claim*

As to the RICO claim, it is well settled that "[i]n the RICO context, Rule 9(b) calls

for the complaint to 'specify the statements it claims were false or misleading, give

particulars as to the respect in which plaintiffs contend the statements were fraudulent,

state when and where the statements were made, and identify those responsible for the

statements.'" *Moore v. PaineWebber*, 189 F.3d 165, 173 (2d Cir. 1999) (quoting *McLaughlin*

_____

[7] To establish a civil RICO claim, "a plaintiff must show: '(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'" *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (quoting *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir. 1996)). A RICO plaintiff has two pleading burdens. First, a plaintiff "must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962, commonly known as 'criminal RICO.'" *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). To plead such a violation, the plaintiff must allege the following "seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Id.* (quoting 18 U.S.C. § 1962(a)–(c)). In addition, "to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); *see also Fossil Grp. Inc., v. Angel Seller LLC*, ___ F. Supp. 3d ___, No. 20-CV-2441 (HG) (TAM), 2022 WL 4131963 (E.D.N.Y. 2022) (discussing RICO pleading standards and the distinctness requirement). Due to the inherent complexity in pleading RICO, and the treble damages provision, it has been frequently observed that "courts must 'flush out' frivolous RICO complaints 'at an early stage of the litigation.'" *Gutterman v. Herzog*, No. 20-CV-1081 (AMD) (LB), 2020 WL 6728787, at *3 (E.D.N.Y. Nov. 16, 2020) (quoting *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 496 (S.D.N.Y. 2007)).

*v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992)). Plaintiffs must also "allege facts that give rise to a strong inference of fraudulent intent." *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 812 (2d Cir. 1996). Defendants argue that the RICO fraud claims are not pled with particularity, that it is a "concocted" and "bizarre" story, and that the underlying disputes are already being litigated in state court. (*See* Milos Decl., ECF No. 23-1, ¶¶ 48–49; Tong Mem. of Law, ECF No. 22-7, at 2.) Given the complexity of pleading RICO, the manner in which the Complaint is pled, the evidence Defendants have presented regarding potentially overlapping state court actions, as well their arguments regarding disputes as to the underlying facts of the transactions and monies owed, the Court finds that Defendants have raised multiple potentially meritorious legal and factual arguments. (*See* Milos Decl., ECF No. 23-1, ¶¶ 35–44, 46 (arguing that the monetary amounts sought here are duplicative with damages sought in pending state court litigations).) This is not a case where Defendants have merely presented "conclusory denials when attempting to show the existence of a meritorious defense." *Pecarsky*, 249 F.3d at 173.[8] Given the complexities of pleading civil RICO and Defendant Tong's argument that the fraud claims lack specificity as to her, Defendants should be afforded the opportunity to test Plaintiffs' RICO allegations on the merits.

---

[8] Notably, in evaluating whether to grant a motion for a default judgment, a plaintiff "is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). The Court must still determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *see also Bronx Gate & Grille v. Deleon*, No. 07-CV-4411 (RJD) (JO), 2008 WL 5069533, at *3 (E.D.N.Y. Nov. 24, 2008) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). Here, the Court is skeptical regarding Plaintiffs' RICO claims as currently alleged for several reasons, including but not limited to the speculation in the Complaint regarding the members of the enterprise, the description of the enterprise, lack of clarity regarding the mailings and wires that allegedly constitute predicate acts, and the arguments raised by Defendant Tong. Should the RICO claim be vulnerable to a motion to dismiss, this also raises questions regarding the basis for federal jurisdiction, as it is currently premised on the RICO claim.

2.  *State Law Claims*

As noted above, Plaintiffs allege many state law claims, some of which may already be the subject of state court litigation, and some of which may be duplicative with one another in this case, such as the third cause of action alleging unjust enrichment. (Compl., ECF No. 1, ¶¶ 124–29.) However, "[a]n unjust enrichment claim is not available [under New York law] where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012); *see also Gov't Emps. Ins. v. Armengol*, No. 20-CV-6052 (RPK) (SJB), 2022 WL 432320, at *7 (E.D.N.Y. Jan. 19, 2022) ("[U]njust enrichment is not always viable when one party unjustly holds property or money of another. Properly understood, the claim protects a plaintiff only in those circumstances where she has no other recourse in tort or contract."), *report and recommendation adopted in relevant part*, No. 20-CV-6052 (RPK) (SJB), 2022 WL 426163 (E.D.N.Y. Feb. 11, 2022). Given the evidence presented as to the existence of the underlying state actions, the potentially redundant claims, and the possibility of an attempt at duplicative recovery here and in state court, fairness dictates that Defendants should be permitted to defend this case on the merits.

Whether any of Defendants' legal or factual defenses will prevail of course remains to be seen, but in light of the Second Circuit's long-standing preference for resolving disputes on the merits and the relative lack of prejudice to Plaintiffs in this early stage of the case, a balancing of the *Enron Oil* factors tilts heavily in Defendants' favor.

D.  **Equitable Considerations**

In addition to the Court's conclusion that Defendants have posited meritorious defenses and the lack of cognizable prejudice to Plaintiffs, the Court further finds that entry of the default judgment requested here would result in an extremely harsh and

unfair result. In their default motion, Plaintiffs request a damages award of $3,799,500 due to the RICO treble damages provision, as well as attorneys fees in the amount of $19,762, for a total damages award of $3,819,262, plus interest. (Maione Decl., ECF No. 12-1, ¶¶ 7–8.[9]) Given the extraordinarily punitive relief Plaintiffs seek, depriving Defendants the opportunity to present a defense and litigate this case is not in the interests of justice. Plaintiffs' motion for entry of a default judgment should thus be denied, Defendants' motions to vacate and set aside the entry of default should be granted, and Defendants should be permitted to fully participate in this lawsuit. *See, e.g., Raheim*, 2007 WL 2363010, at *6.

## CONCLUSION

Considering the totality of the record, including Defendants' proffered defenses and the harsh and unfair result that could flow from not vacating the default, the Court rejects Plaintiffs' argument that a default judgment should be entered regardless of Defendants' prompt appearance following the Clerk's entry of default. Accordingly, this Court respectfully recommends that (1) Plaintiffs' motion for default (ECF No. 12) be denied, (2) the Clerk's Entry of Default (ECF No. 11) be set aside, (3) Defendant Tong's motion to set aside the default (ECF No. 22) be granted, (4) Defendants Zhuang and ACE Capital's cross-motion to vacate the default (ECF No. 23) be granted; and (5) Defendants' time to answer or otherwise respond to Plaintiffs' complaint be extended.

\*    \*    \*    \*    \*

---

[9] Plaintiffs' counsel's declaration states that the total damages are $4,819,262, but this appears to be a typo or an arithmetic error based on the prior representations, which claim damages of $3,799,500 and attorneys fees in the amount of $19,762. (*See* Maione Decl., ECF No. 12-1, ¶¶ 7 & 8.)

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.,* *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision" (quotation marks omitted).).

**SO ORDERED.**

Dated:    Brooklyn, New York
          October 27, 2022

_____*Taryn A. Merkl*_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

18