UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X
KEYU LONG, personally and
derivatively on behalf of both J Navi De
Fund One, LLC, and New York Education
Center, Inc.,

                        Plaintiffs,                        **REPORT AND**
                                                           **RECOMMENDATION**
            -against-                                      22-CV-1293 (DG) (TAM)

SHUNHUANG ZHUANG, ACE
CAPITAL LLC, YAN TONG, and DOES
1–5,

                        Defendants.
----------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

    Keyu Long, named personally and derivatively on behalf of J Navi De Fund One

LLC, and New York Education Center, Inc. (referred to collectively as "Plaintiffs"),

alleges that Defendants Shunhuang "Peter" Zhuang, ACE Capital, LLC ("ACE

Capital"), Yan Tong, and unspecified "Does," have engaged in federal racketeering

activity and related state law claims as part of a scheme to defraud Plaintiffs of in excess

of $800,000. (Am. Compl., ECF No. 34, ¶¶ 1, 2, 16–66, 87–99, 106, 131–44 (RICO claim).)

Defendants Zhuang and ACE Capital LLC have filed a motion to dismiss, which the

Honorable Diane Gujarati referred to the undersigned Magistrate Judge for a report and

recommendation.

    For the reasons set forth below, this Court respectfully recommends granting

Defendants' motion to dismiss as to Plaintiffs' racketeering claims for failure to state a

claim and declining to exercise supplemental jurisdiction over Plaintiffs' remaining

state law claims. The Court also recommends granting Plaintiffs' motion for leave to file

a motion to amend.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. Procedural History

The Court assumes general familiarity with the substance and history of the case and includes only the background relevant to the instant motions. On March 9, 2022, Keyu Long initiated suit, personally and derivatively on behalf of both J Navi De One Fund, LLC ("J Navi"), and New York Education Center, Inc. ("NYEC"), against Defendants Shunhuang Zhuang, also known as "Peter" Zhuang, ACE Capital, Inc., Yan Tong, and Does 1–5. (*See* Compl., ECF No. 1.) On March 29, 2022, Plaintiffs filed an affidavit of service indicating that service had been effected on ACE Capital, Inc., by service of Harvard Business Services, Inc., as registered agent of ACE Capital on March 21, 2022. (Aff. of Service, ECF No. 6.[1]) After Plaintiffs failed to timely appear in the case, on May 12, 2022, Plaintiffs' counsel requested a certificate of default, followed by a motion for a default judgment on May 22, 2022. (*See* Req. for Certificate of Default, ECF No. 10; Clerk's Entry of Default, ECF No. 11; Mot. for Default J., ECF No. 12.) Shortly thereafter, counsel for Defendants appeared. (*See* Notices of Appearance, ECF Nos. 15 & 16.) Following briefing on Defendants' motions to vacate the default, on October 27, 2022, the Court issued a report and recommendation recommending that Plaintiffs' motion for a default judgment be denied and that Defendants' motions to vacate and set aside the default be granted; the Honorable Diane Gujarati adopted the Court's report and recommendation on March 20, 2023. (*See* R. & R., ECF No. 28; Mar. 20, 2023 ECF Order Adopting R. & R.)

---

[1] The affidavits of service docketed at ECF numbers six and seven are both described on the docket as "Summons Returned Unexecuted," notwithstanding that each affidavit details efforts at service. (*See* Affs. of Service, ECF Nos. 6 & 7.) Also in late March 2022, Plaintiffs filed affidavits of service as to Defendants Shunhuang Zhuang and Yan Tong. (*See* Affs. of Service, ECF Nos. 7 & 8.)

Shortly thereafter, Defendants requested a pre-motion conference in anticipation of filing motions to dismiss, which were ultimately denied contemporaneously with Judge Gujarati's granting Plaintiffs leave to amend. (*See* Letter, ECF No. 31 & Mot. for Pre-Mot. Conf., ECF No. 32; Apr. 24, 2023 ECF Order.) On May 15, 2023, Plaintiffs filed their amended complaint, which included various changes, including, *inter alia*, a modification to the name of derivative Plaintiff J Navi, and naming ACE Capital LLC in lieu of Ace Capital, Inc. (Am. Compl., ECF No. 34.) In response to the amended complaint, both Defendants requested leave to file motions to dismiss. (Am. Compl., ECF No. 34; Mots. for Pre-Mot. Conf., ECF Nos. 36 & 37.) Judge Gujarati held a pre-motion conference, which resulted in a referral to mediation. Following the mediation, on December 8, 2023, Plaintiffs and Defendant Yan Tong filed a stipulation of dismissal as to Defendant Tong only, without prejudice. (Stip., ECF No. 52.)

Defendants Zhuang and ACE Capital (referred to collectively as "Defendants") now move to dismiss the amended complaint. On May 29, 2024, the Court scheduled oral argument on the motion, directing counsel to be prepared to argue the sufficiency of Plaintiffs' RICO claims, including the allegations regarding the existence and structure of the enterprise and the alleged pattern of racketeering, including relatedness and continuity. (May 29, 2024 ECF Order.) Shortly thereafter, on June 10, 2024, Plaintiffs' counsel filed a letter identifying a potential conflict of interest that had recently come to his attention. (Pls.' Letter, ECF No. 62.) In lieu of the scheduled oral argument on the motion to dismiss, the Court held a status conference on June 18, 2024, to address Plaintiffs' counsel's potential conflict of interest. (June 18, 2024 ECF Min. Entry & Order.) At the conference, the Court found that Plaintiffs' counsel was laboring under an actual conflict and set a deadline for Plaintiffs to have new counsel enter a

notice of appearance; the Court also indicated its intention to take the motion to dismiss under advisement. (*Id.*)

Plaintiffs' counsel filed a motion to withdraw as counsel on July 23, 2024. (Mot. to Allow Withdrawal of Counsel, ECF No. 64.) The motion was denied on July 24, 2024, for procedural deficiencies, and counsel renewed his motion on August 3, 2024. (July 24, 2024 ECF Order; Renewed Mot. to Allow Withdrawal of Counsel, ECF No. 65.) New counsel for Plaintiffs entered notices of appearance on August 6, 2024, and filed a motion to substitute counsel and for a deadline by which Plaintiffs may seek leave to amend the complaint to add a potential co-conspirator in the alleged scheme. (Notices of Appearance, ECF Nos. 66, 68; Letter Mot., ECF No. 67.)

For the reasons set forth below, the Court respectfully recommends dismissal of Plaintiffs' RICO claim and declination of supplemental jurisdiction over the remaining state law claims. In light of the factual developments at the June 18, 2024 conference and Plaintiffs' new representation, the Court respectfully recommends that the motion for an extension of time to amend the complaint be granted in part, and that Plaintiffs be given leave to file a motion to amend the complaint.

## II. The Amended Complaint

As a threshold matter, the Court notes that federal jurisdiction in this case is premised on the inclusion of the RICO claims. (*See* Am. Compl., ECF No. 34, ¶ 13 (citing 18 U.S.C. § 1331); *id.* ¶¶ 131–44 (first cause of action, alleging civil RICO and civil RICO conspiracy).) All of Plaintiffs' remaining claims are based on state law. (*Id.* ¶¶ 145–52 (second cause of action, alleging misrepresentation and fraud in the inducement and in factum); *id.* ¶¶ 153–58 (third cause of action, alleging unjust enrichment); *id.* ¶¶ 159–66 (fourth cause of action, based on equitable and promissory estoppel); *id.* ¶¶ 167–70 (fifth cause of action, requesting, *inter alia*, imposition of a constructive trust, an equitable

accounting, and expedited discovery); *id.* ¶¶ 171–75 (sixth cause of action, alleging prima facie fraud under New York law related to an allegedly fraudulent conveyance of real property from Defendant Zhuang to former Defendant Yan Tong).)

**A. Plaintiffs' RICO Allegations**

1. *The Enterprise*

The amended complaint identifies the alleged enterprise as an association-in-fact entity, which included ACE Capital, Defendant Zhuang, Yan Tong, and Does 1–5. (*Id.* ¶¶ 133, 13 (alleging that Defendants comprise the enterprise).) Plaintiffs' amended complaint summarizes the alleged RICO theory at the outset, stating that Defendant Zhuang, together with his ex-wife, former Defendant Yan Tong, engaged in a pattern of racketeering activity "through the facilities of defendant ACE Capital, and joined in by others described herein as 'Does' 1 through 5, to defraud Plaintiffs and others similarly situated, by forming an 'association-in-fact' and engaging in a scheme or artifice to defraud" that used the interstate wires and mail. (*Id.* ¶ 1.) The alleged purpose of the enterprise was to "induce Plaintiffs and others to ostensibly loan monies to him so that, in turn, he could make personal loan [sic] to others, but which were utilized by him to 'day trade' through defendant ACE Capital, and in some instances to purchase real property in the greater New York metropolitan area." (*Id.*)

Plaintiffs further allege that Defendant ACE Capital is Zhuang's "alter ego," and that he utilizes ACE Capital to, *inter alia*, day trade, make investments, and purchase property. (*Id.* ¶ 6; *see also id.* ¶ 58 ("ACE has no assets but is merely the 'alter ego' for Zhuang to day trade and, occasionally, to facilitate financial transactions when transferring funds in connection with purchases of real estate by Zhuang and his associates, i.e., the unnamed Does."); *id.* ¶ 101 (alleging that "ACE Capital does not own

any properties listed" on its website and "does no other business except to make day trades by Peter").)

As to Yan Tong, the amended complaint avers that she was aware that Zhuang used an address that had been transferred to her in their divorce, namely 9 Old Pond Road, Great Neck, NY (the "Old Pond Property") as "putative 'collateral' to convince lenders that their Loan is being secured and, therefore, [was] at the very least complicit in [Zhuang's] fraudulent activities by acquiescing in, and aiding and abetting" Zhuang's fraudulent representations. (*Id.* ¶ 59.) Plaintiffs further allege that Tong maintained a bank account with Zhuang. (*Id.* ¶¶ 60, 2; *see also id.* ¶ 103 (reiterating that "Yan [Tong] is both on the ACE Capital account and the joint account[] and participated in the fraud by allowing Peter to use the Old Pond Address as 'collateral'").)

The Doe Defendants are alleged to be "Zhuang confederates who have been recipients of the monies obtained by Zhuang through fraud and make up an integral part of the association-in-fact." (*Id.* ¶ 11.) They are also described as individuals with whom Zhuang has purchased real property, "with the monies which he obtains by defrauding others." (*Id.* ¶ 6; *see also id.* ¶ 58.) Plaintiffs claim that Zhuang's association-in-fact with the Does began as early as 2016 for the creation of promissory notes, which "were drafted purposefully to avoid being able to be enforced because of the built-in usurious rates of interest to which Zhuang was aware." (*Id.* ¶ 107.) Plaintiffs also allege that "[t]here appear to be a number of Doe Defendants either who are operating in consort [sic] with Zhuang and Tong, or have facilitated their scheme and are part of the overall criminal enterprise." (*Id.* ¶ 116.)

2. *The Underlying Frauds*

Notwithstanding the somewhat sprawling and unartfully pleaded allegations in the amended complaint, the core fraud alleged in this case can be described fairly

simply. Plaintiffs allege that Defendant Zhuang extended fraudulent promissory notes that he drafted to secure at least two loans from Plaintiffs.[2] (*See id.* ¶¶ 16–51.) The promissory notes are alleged to be fraudulent in multiple ways. First, the notes purposefully included a usurious interest rate, which Zhuang knew would be unenforceable in the New York courts. (*See id.* ¶¶ 20, 39, 65, 87, 91.) In addition, the promissory notes variously misrepresented why the loans had been sought and what the loaned funds would be used for. (*See id.* ¶¶ 36, 49.) In addition, in connection with the scheme, Zhuang promised collateral for the loans that he did not own. (*See id.* ¶¶ 24, 37, 50.) After obtaining funds on the notes through these fraudulent representations, Zhuang used the monies he obtained to day trade and then defaulted on the obligation to pay the promissory notes. (*See id.* ¶¶ 1, 51, 52, 66.)

The amended complaint provides somewhat detailed factual allegations concerning two loans, one in the amount of $450,000, which was secured by a promissory note issued by Zhuang to Plaintiff NYEC on or about March 16, 2018 (the "NYEC Note"), and the second in the total amount of $350,000, also issued by Zhuang, and secured by a promissory note to Plaintiff J Navi, on or about January 2, 2019 (the "J Navi Note"). (*See id.* ¶¶ 16–51.) As to the first loan, secured by the NYEC Note, Plaintiffs claim that all monies were transferred via wire to JP Morgan Chase for further credit to an ACE Capital Fidelity Investments account. (*Id.* ¶ 19.) The NYEC Note recited that Defendant Zhuang warranted that it was for Mr. Jian Feng Dai, the owner of a property in Queens with a market value of $5,000,000, and that the property would

---

[2] The amended complaint also mentions other defaulted notes, apparently in an effort to demonstrate a broader fraudulent scheme, expressly noting that those notes are not alleged in this case. (*See, e.g.*, Am. Compl., ECF No. 34, ¶¶ 28, 52, 55.) The Court of course takes the allegations in Plaintiffs' amended complaint as true, as it must on a motion to dismiss.

be used as collateral to secure the loan. (*Id.* ¶ 36.) Mr. Dai does not own the property listed on the note. (*Id.* ¶ 37.)

Plaintiffs aver that prior to June 2018, Defendant Zhuang made "only one or two" interest payments on the NYEC Note, one of which was drawn from a joint checking account held by Zhuang and Yan Tong on March 27, 2018. (*Id.* ¶ 22.) Plaintiffs continue by alleging that "[o]n that same date," Zhuang informed Plaintiff Long that he would "not be able to make any further interest payments presently as they came due." (*Id.* ¶ 23.) In an effort to reassure Long, Zhuang provided her with a personal guaranty "to further secure the NYEC Note" by unconditionally guaranteeing repayment on the loan with all his assets, including but "not limited to ACE Capital LLC and 9 old pond RD Great Neck, NY." (*Id.* ¶ 24 (capitalization in original).) Plaintiff Long later discovered that Defendant Zhuang had "ostensibly" transferred the Old Pond Property to Yan Tong during their divorce almost a year earlier, on or about June 21, 2017. (*Id.* ¶ 27.)

As to the second note, Plaintiffs state that it was executed in the amount of $300,000, in favor of J Navi, on or about January 2, 2019. (*Id.* ¶¶ 39, 41.) To reassure Plaintiffs that he would repay the J Navi note, Zhuang executed a confession of judgment, also dated January 2, 2019, in favor of J Navi. (*Id.* ¶ 42.) The following day, after J Navi sent Zhuang $350,000, instead of $300,000, Zhuang provided J Navi with an "Addendum," whereby Zhuang "acknowledged the overall debt in writing." (*Id.* ¶ 44.) The J Navi Note recited that its purpose was "to fund a personal loan to Mr. Meng Hua Wang [(referred to as "Meng Hua" in the amended complaint)] and the development of a condominium at 35-08 146th St., Flushing, NY 11354," and that Meng Hua "owned that property on 146th Street, valued at $50,000,000.00 with a 1st lien mortgage of about $26,000,000.00." (*Id.* ¶ 49 (quotation marks and alteration omitted).) According to the

8

complaint, Meng Hua does not own the condominium property. (*Id.* ¶ 50.) Rather, Zhuang used the proceeds from the J Navi Note to day trade and did not lend them to Meng Hua. (*Id.* ¶¶ 50–51.)

## DISCUSSION

### I.  Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." To survive dismissal, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'" (quoting *Twombly*, 550 U.S. at 557)).

On a Rule 12(b)(6) motion, "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). Accordingly, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). However, it is well established that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (modifications and quotation marks omitted).

## II.  Analysis

Defendants move to dismiss on several grounds. Specifically, Defendants contend that Plaintiffs have failed to state claim and have failed to serve Defendant ACE Capital LLC.[3] Defendants further argue that Plaintiffs lack standing[4] and that the case is precluded by "res judicata / collateral estoppel." (Defs.' Mot., ECF No. 56-1, ¶ 5.) Since federal jurisdiction in this case is premised on the racketeering allegations, the Court first turns to the RICO claims. For the reasons set forth below, Plaintiffs' RICO claims are deficient and should be dismissed. In addition, the Court recommends that jurisdiction over the state law claims should not be retained and that the amended complaint should be dismissed in its entirety.

### A.  The RICO Claims

#### 1.  *Background Law*

"The RICO statute is a very powerful, but tricky, tool." *Fossil Grp., Inc. v. Angel Seller LLC*, 627 F. Supp. 3d 180, 198 (E.D.N.Y. 2022). Under RICO, it is unlawful "for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

---

[3] With regard to service, Defendants contend that the amended complaint was never served on ACE Capital because the summons in this case was issued to ACE Capital, Inc., not ACE Capital LLC, and that this Court thus lacks personal jurisdiction over Defendants. (Defs.' Mot., ECF No. 56-1, ¶¶ 14–20.) Plaintiffs respond by arguing that the mis-naming of Defendant ACE Capital was a ministerial mistake, that ACE Capital had actual notice of the lawsuit, that the amended complaint relates back to the original pleading, and, in any event, that the Court has discretion to permit Plaintiffs time to serve ACE Capital LLC. (Pls.' Opp'n, ECF No. 55, at 3–6.) The Court recommends declining to reach this potentially fact-intensive issue in light of the recommendation set forth below that the motion to dismiss be granted and that the amended complaint be dismissed in its entirety.

[4] The Court notes that the "standing" issue raised by Defendants is actually whether the complaint complies with the pleading requirements for derivative actions under Rule 23.1 of the Federal Rules of Civil Procedure, *not* Article III standing. (Am. Compl., ECF No. 34, ¶ 73.) Since this does not present an Article III standing concern, it does not run the risk of depriving the Court of jurisdiction to assess the sufficiency of the complaint on other grounds.

racketeering activity." 18 U.S.C. § 1962(c); *see also United States v. Indelicato*, 865 F.2d 1370, 1373 (2d Cir. 1989) (en banc). In turn, 18 U.S.C. § 1962(d) makes it unlawful "for any person to conspire to violate any of the provisions" of the RICO statute. A "person," for RICO purposes, "includes any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). "'Enterprise' is defined to 'include[ ] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *Bankers Trust Co. v. Rhoades*, 741 F.2d 511, 515 (2d Cir. 1984) (alteration omitted) (quoting 18 U.S.C. § 1961(4)).

To establish a civil RICO claim, "a plaintiff must show: '(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'" *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (quoting *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir. 1996)). A RICO plaintiff has two main pleading burdens. First, a plaintiff "must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962, commonly known as 'criminal RICO.'" *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). To plead a RICO violation, the plaintiff must allege the following "seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Id*. (quoting 18 U.S.C. § 1962(a)–(c)). These seven elements must be adequately alleged "before turning to the second burden—*i.e.*, invoking RICO's civil remedies." *Id*.

As to the second burden, a civil plaintiff must allege "that he was 'injured in his business or property by reason of a violation of section 1962.'" *Id.* (emphasis omitted) (quoting 18 U.S.C. § 1964(c)).[5] In addition, the alleged RICO pattern must be pled with specificity and, in the case of fraud, particularity. *See Moore v. PaineWebber*, 189 F.3d 165, 173 (2d Cir. 1999). A defect in pleading any of the complex RICO elements may render a RICO claim implausible. *Cf. Moss*, 719 F.2d at 17 (setting forth the elements required to allege a civil RICO claim). Invoking the statutory language of RICO does not suffice to plead a racketeering offense. Rather, sufficient factual matter must be pleaded to plausibly allege each element, as required under *Iqbal*.

Due to the inherent complexity in pleading RICO, and the treble damages provision, it has been frequently observed that "courts must 'flush out' frivolous RICO complaints 'at an early stage of the litigation.'" *Gutterman v. Herzog*, No. 20-CV-1081 (AMD) (LB), 2020 WL 6728787, at *3 (E.D.N.Y. Nov. 16, 2020) (quoting *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 496 (S.D.N.Y. 2007)). Consequently, "courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case." *Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 537 (S.D.N.Y. 2001) (quoting *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998)). Moreover, "RICO claims based on fraud receive especially careful scrutiny because 'virtually every ordinary fraud is carried out in some form by means of mail or wire communication,' and thus there is 'the potential for transforming garden-variety common law actions into federal cases.'" *Abbott Lab'ys v. Adelphia Supply USA*, No. 15-CV-5826 (CBA) (LB), 2017 WL 57802, at *2 (E.D.N.Y. Jan. 4, 2017) (quoting

---

[5] Given the myriad deficiencies identified herein as to Plaintiffs' RICO claim with respect to the essential elements, the Court does not separately address this second pleading burden. In light of the many defects identified below, however, the Court questions whether Plaintiffs have alleged injury caused by a RICO violation *beyond those injuries* caused by the fraud schemes.

*Gross v. Waywell*, 628 F. Supp. 2d 475, 493 (S.D.N.Y. 2009)); *see also JGIAP RH 160 v. CRI Holding Corp.*, No. 21-CV-2489 (DG) (JRC), 2023 WL 5979125, at *10 (E.D.N.Y. Aug. 16, 2023) (discussing the need for heightened scrutiny in RICO claims based on wire fraud allegations), *report and recommendation adopted*, 2023 WL 6307320 (E.D.N.Y. Sept. 28, 2023); *Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, No. 11-CV-7801 (PAE), 2012 WL 1231775, at *4 (S.D.N.Y. Apr. 12, 2012) (collecting cases).

As to cases involving allegations of fraud, "[i]n the RICO context, Rule 9(b) calls for the complaint to 'specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" *Moore*, 189 F.3d at 173 (quoting *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992)). Plaintiffs must also "allege facts that give rise to a strong inference of fraudulent intent." *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812 (2d Cir. 1996).

2. *Plaintiffs' RICO Allegations are Inadequately Pleaded*

Defendants argue that the RICO claim is "not plead[ed] with the requisite specificity." (Defs.' Mot., ECF No. 56-1, ¶ 57.)[6] Defendants also argue that the claim is "duplicative" with the state court case.[7] (*Id.*) Having carefully reviewed the amended complaint, the Court finds that the RICO allegations are deficient in myriad ways.

---

[6] The Court notes that the paragraphs of Defendants' motion to dismiss setting forth the applicable law as to RICO appear to be copied nearly verbatim from the Court's prior opinion in this case, with no attribution. (*Compare* Defs.' Mot., ECF No. 56-1, ¶¶ 55–56, *with* R. & R., ECF No. 28, at 14, n.7.) Counsel is respectfully directed to include appropriate attribution for quotations in all future filings in federal court.

[7] The Court does not consider this argument because of the conclusion that the RICO claims are inadequate and because it would require the Court to look beyond the pleadings. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (observing that courts adjudicating a motion

First, Plaintiffs have not alleged a cognizable RICO enterprise — rather, the allegations in the amended complaint amount to little more than a fraud scheme masterminded by Zhuang. As discussed below, the allegations concerning the enterprise fail to provide sufficient facts to state (1) a cognizable enterprise structure, (2) how the members of the enterprise conducted the affairs of the enterprise, and (3) how the predicate acts differ from the enterprise itself. Second, the RICO claim as to Defendant ACE Capital must be dismissed as it fails to allege distinctness between the corporate defendant and individual defendant Zhuang. Third, the RICO predicate acts (1) are not alleged with specificity and (2) fail to demonstrate the requisite continuity so as to establish a RICO pattern. Fourth, the allegations do not adequately allege the necessary vertical and horizontal relatedness between the RICO enterprise and the predicate racketeering acts.

a. <u>The Enterprise</u>

"[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) ("*Kushner*"). In addition, the enterprise must exist separate and apart from the alleged predicate acts, as the Supreme Court explained in *Turkette*:

> The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. 18 U.S.C. § 1961(1) (1976 ed., Supp. III). The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise.

to dismiss "may review only a narrow universe of materials" and "do not look beyond 'facts stated on the face of the complaint'" (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016))).

> While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved . . . .

*United States v. Turkette*, 452 U.S. 576, 583 (1981).

As to association-in-fact enterprises, the Supreme Court in *Boyle v. United States*, 556 U.S. 938 (2009), observed that:

> "[A]n enterprise includes any union or group of individuals associated in fact" and that RICO reaches "a group of persons associated together for a common purpose of engaging in a course of conduct." *Turkette*, 452 U.S. at 580, 583. Such an enterprise, we said, "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* at 583.

556 U.S. at 944–45. Under *Boyle*, to establish an enterprise, there must be a discernible structure. *Id.* at 945; *see also id.* at 946 ("[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."). In addition, "'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' § 1962(c), one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (quoting 18 U.S.C. § 1962(c)).

Here, the allegations entirely fail to plead a RICO enterprise, as opposed to a fraud scheme primarily led by a single individual who utilized a corporate entity to further his frauds, and who may have relied upon the assistance of others. Even where a fraud scheme may be invidious, the alleged involvement of multiple co-conspirators and a corporate entity does not transmogrify an ordinary fraud scheme into a racketeering enterprise. Much more is required. In addition, the RICO claim against

Defendant ACE Capital must be dismissed as ACE Capital is not a distinct RICO person.

      i.   *Plaintiffs Have Failed to Plead the Enterprise's Structure*

The amended complaint fails to articulate any cognizable structure to the enterprise. As forth above, a RICO pleading that claims an association-in-fact enterprise must allege the purpose of the enterprise, as well as the "relationships among those associated with the enterprise." *Boyle*, 556 U.S. at 946. Here, there are no allegations regarding the structure of the organization or of the alleged members' relationships. Normally, "[i]n determining whether plaintiffs have alleged the existence of an association-in-fact RICO enterprise, courts analyze the 'hierarchy, organization, and activities of the alleged association to determine whether its members functioned as a unit.'" *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 360 (S.D.N.Y. 2014) (quoting *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (hereinafter "*Satinwood*")).

Construing the amended complaint's allegations in the light most favorable to Plaintiffs, the scheme alleged here resembles a hub-and-spoke type fraud conspiracy, with Zhuang as the hub. The amended complaint repeatedly describes Defendant ACE Capital as his "alter ego," and, other than the conclusory assertion that Yan Tong was involved with ACE Capital, describes no relationship between ACE Capital and any other alleged member of the association-in-fact. (*See* Am. Compl., ECF No. 34, ¶ 32 (referring to an ACE Capital account that Zhuang and Tong maintained jointly); *id.* ¶ 110 (stating that Tong assists Zhuang in his businesses, including ACE Capital).) As to Tong's role, the amended complaint alleges that she acquiesced in and aided and abetted Zhuang's fraudulent representations and was on one or more of the bank accounts. (*Id.* ¶¶ 59, 60, 103.) These allegations describe her role in the alleged

fraudulent activity, but not the enterprise itself. As the Second Circuit has observed, "the simple taking of directions and performance of tasks that are 'necessary or helpful' to the enterprise, without more, is insufficient to bring a defendant within the scope of § 1962(c)." *United States v. Diaz*, 176 F.3d 52, 92 (2d Cir. 1999).

Similarly, although the amended complaint details Zhuang's involvement with various alleged schemes and individuals, it is entirely devoid of allegations of how any other alleged members of the association-in-fact, ACE Capital and the Does, shared a common purpose to advance the affairs of the enterprise. Indeed, other than conclusory assertions that the Does are members of the association-in-fact who benefitted in various ways from Zhuang's fraud schemes, the Does are hardly mentioned in the amended complaint at all. (Am. Compl., ECF No. 34, ¶ 11 (stating that the Does are Zhuang's confederates who have received proceeds and form an "integral" part of the association in fact).) There are also no allegations that the Does had relationships with ACE Capital or Tong, or one another. Indeed, the Does are not even identified by name; the allegations as to them are speculative at best. (*See id.* ¶ 123 (alleging that "it is more likely than not that these as yet to be formally named Does also are an integral part of the 'association-in-fact' and have been, and remain engaged in a pattern and scheme to defraud Plaintiffs and others").)[8]

---

[8] Although the amended complaint does identify some additional individuals by name, they are not alleged to be members of the enterprise or named as defendants, and there are no facts from which to infer that these individuals benefitted from the fraud schemes at all. For example, the allegations regarding Mr. Jian Feng Dai and Meng Hua assert that Zhuang made fraudulent representations about them and used their names; the amended complaint does not allege that they were willing participants in the fraud schemes or that they shared a common purpose to advance the affairs of the enterprise. (*See* Am. Compl., ECF No. 34, ¶¶ 37, 45, 49–51.) In addition, the factual allegations regarding the unnamed Does are entirely speculative. (*See, e.g., id.* ¶ 58 (asserting without factual specificity that Zhuang used his "alter ego" ACE Capital to day trade "and, occasionally, to facilitate financial transactions when transferring funds in connection with purchases of real estate by Zhuang and his associates, i.e., the unnamed

Accordingly, the individuals involved in the fraud schemes alleged here (assuming *arguendo* that the underlying schemes involved additional knowing co-conspirators at all), amount at most to spokes on a hub with Zhuang at the middle. It has been observed, however, that "[t]he parallel conduct of a number of 'spokes,' even through a central 'hub,' is not a RICO enterprise without more — that is, without a 'rim' that connects the spokes." *Abbott Lab'ys*, 2017 WL 57802, at *5; *see id.* at *3–4 (discussing the *Boyle* factors and observing that "[c]ourts routinely reject allegations of RICO enterprises" that fail to plead that the "defendants had an interpersonal relationship in which they worked together for a common illicit interest"). As the Second Circuit has similarly explained:

> In other words, when each defendant is alleged to have a relationship with a central figure, but the defendants are not all alleged to be connected in some overarching way (such as by "an agreement to further a single design or purpose"), these courts have found no RICO association-in-fact. *See* Gregory P. Joseph, Civil RICO: A Definitive Guide 105–07 (3d ed. 2010). Without such a limitation, as commentators have observed, one malefactor's series of independent frauds could be cast as a RICO conspiracy, sweeping numerous other individuals into a net of heightened liability under RICO, and doing so even if each fraud was perpetrated quite independently of the others. Such a sweep would seem to run afoul of the principle adopted by the Supreme Court in *Boyle* that individuals who act "independently and without coordination" may not be treated as part of a RICO association-in-fact. *Boyle*, 556 U.S. at 947 n.4.

*D'Addario v. D'Addario*, 901 F.3d 80, 101 (2d Cir. 2018).

The claims here allege no interpersonal relationships between any members of the alleged enterprise other than the conclusory assertion that each of the members of the RICO was an associate of Defendant Zhuang. The complaint is thus devoid of factual allegations that connect the members of the enterprise "in some overarching

---

Does").) Moreover, in the absence of specific, factual allegations about them, the assertion that the Does are members of the association-in-fact enterprise is nothing more than a legal conclusion attempting to masquerade as a factual assertion. The Court need not and does not credit these claims. *See Kirch*, 449 F.3d at 398.

way." *D'Addario*, 901 F.3d at 101. Indeed, the "pleadings constitute nothing more than the 'conclusory naming of a string of entities' combined with legal conclusions." *Abbott Lab'ys*, 2017 WL 57802, at *4. Given that the allegations concerning the association-in-fact enterprise here amount to little more than legal conclusions, they are insufficient to bring Plaintiffs' enterprise allegations over the line from conceivable to "plausible on its face." *Iqbal*, 556 U.S. at 678. (*See* Am. Compl., ECF No. 34, ¶¶ 13, 111, 116, 133.)

    ii.  *Plaintiffs Have Not Alleged How the Enterprise Members Conduct its Affairs*

In addition, although Plaintiffs' pleading incants the language of the RICO statute, there are insufficient factual assertions from which to plausibly infer how *each* of the proposed RICO defendants participated in the "operation or management of the enterprise itself." *Reves*, 507 U.S. at 185. Framed another way, the Supreme Court has made clear that RICO liability "depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." *Kushner*, 533 U.S. at 163 (quoting *Reves*, 507 U.S. at 185) (quotation marks omitted). Here, as discussed above, there is no alleged structure to the enterprise at all, much less specific allegations as to how any of the members of the enterprise conducted its affairs. As a result, Plaintiffs' allegations regarding the association-in-fact members' operation and management of the enterprise amount to nothing more than legal conclusions couched as factual allegations, which the Court need not and does not accept. *See Iqbal*, 556 U.S. at 678. (*See* Am. Compl., ECF No. 34, ¶¶ 132, 133, 136–39.)

It is generally true that "[i]n the Second Circuit, 'the operation or management test typically has proven to be a relatively low hurdle for plaintiffs to clear, especially at the pleading stage.'" *Bd. of Managers of Trump Tower v. Palazzolo*, 346 F. Supp. 3d 432, 461 (S.D.N.Y. 2018) (quoting *Satinwood*, 385 F.3d at 176 (internal quotation marks omitted)).

"The question for the Court is simply whether 'the RICO defendant . . . played *some* part in directing the enterprise's affairs.'" *Id.* (quoting *Satinwood,* 385 F.3d at 176) (alteration and internal quotation marks omitted in *Bd. of Managers*). In this case, however, the complaint is devoid of allegations as to how any of the members of the association-in-fact participated in the affairs of the enterprise itself.

   iii. <u>Plaintiffs Have Failed to Plead an Enterprise Separate from the Predicates</u>

  "Plaintiffs also merely lump all the Defendants[] together in an attempt to manufacture an enterprise." *Aerowest GmbH v. Freitag*, No. 15-CV-2894 (LDW), 2016 WL 3636619, at *4 (E.D.N.Y. June 28, 2016). As discussed above, the Supreme Court has made clear that the "'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583. Phrased another way, "[t]he defendants cannot be grouped together for the sole reason that they all allegedly had [involvement] in the alleged acts. The 'enterprise,' . . . must exist and function separately from the alleged illegal acts." *Aerowest GmbH*, 2016 WL 3636619, at *4 (quotation marks and citations omitted). But that is precisely what is missing from the allegations here. In describing the purpose of the association-in-fact enterprise, the amended complaint states as follows:

> At all relevant times, Defendants formed an association-in-fact whose common purpose was to defraud Plaintiffs and others similarly situated into loaning through the use of wire transfers money pursuant to a Note on which they likely could not recover because Defendants purposely created the instruments at interest rates that would be deemed usurious, thereby negating any recovery, and giving Defendants a windfall.

(Am. Compl., ECF No. 34, ¶ 136.) Having reviewed the pleadings closely, the Court cannot discern any distinction between the enterprise itself and the illegal conduct Defendants purportedly committed. Plaintiffs' failure to distinguish between the enterprise and its alleged illegal acts is fatal to the RICO claims.

b.  <u>The Distinctness Requirement</u>

As set forth above, civil RICO claims must allege "(1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Kushner*, 533 U.S. at 161. As a general rule, however, "[a] corporate entity can be sued as a RICO 'person' or named as a RICO 'enterprise,' <u>see</u> 18 U.S.C. § 1961(3), (4), but the same entity cannot be <u>both</u> the RICO person and the enterprise." *U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 205 (2d Cir. 2017) (citations omitted; emphasis in original). As the district court observed in *Palatkevich*, under *Kushner* and Second Circuit precedent, in cases where both natural persons and corporate entities are named RICO defendants,

> the distinctness rules are as follows: within the meaning of § 1962(c), a natural person named as the defendant "person" is inherently distinct from a corporate entity "enterprise" for which he acts as an agent; in such a case, the distinctness requirement is met. *See Kushner*, 533 U.S. at 163. But where a *corporate entity* is named as the defendant "person," it is not distinct from any alleged "enterprise" consisting of that corporate defendant together with related companies, employees, or agents.

*Palatkevich v. Choupak*, Nos. 12-CV-1681 (CM) & 12-CV-1682 (CM), 2014 WL 1509236, at *15 (S.D.N.Y. Jan. 24, 2014) (emphasis in original).

Just as in *Palatkevich*, all of the Defendants here, including both the natural persons and ACE Capital, are named as RICO persons. (*See* Am. Compl., ECF No. 34, ¶ 134.) Based on the current pleadings, however, which allege that ACE Capital was nothing more than Zhuang's "alter ego," the amended complaint fails to allege facts from which to infer that ACE Capital is distinct from Zhuang such that ACE Capital may be named as a separate RICO person. Accordingly, the RICO claim against ACE Capital should be dismissed on this ground alone. *See U1it4less, Inc.*, 871 F.3d at 205.

21

c. <u>Predicate Acts</u>

i. <u>*Plaintiffs Fail to Allege a Pattern of Racketeering Activity*</u>

As discussed above, Plaintiffs' RICO claim is based on predicate acts of mail and wire fraud. Other than asserting that there were mailings and wires used and mentioning *one* wire transfer in connection with a specific transaction, the amended complaint fails to provide any specific factual allegations as to how the mails and wires were used, when, and by whom. (*See, e.g.*, Am. Compl., ECF No. 34, ¶¶ 18–19 (discussing wire transfer, presumably in March 2018, to JP Morgan Chase for further credit to an ACE Capital Fidelity Investments account).) The complaint thus fails to state which predicate acts it relies upon in support of the racketeering allegations, which Defendants committed them, and when. Instead, after discussing the two allegedly fraudulent promissory notes in some detail, the amended complaint asserts that the enterprise engaged in at least four predicate acts as follows:

> The enterprise includes ACE Capital and the association-in-fact, [i.e.], Zhuang, Tong and Does 1–5, which through this pattern of criminality, having engaged in at least four predicate acts which occurred within a period of approximately 5 years, whereby they have engaged in acts of criminality proscribed by the Act, among others, wire fraud.

(Am. Compl., ECF No. 34, ¶ 133.) The complaint further alleges that:

> Defendants Zhuang, ACE, and Tong, and Does 1–5, also comprise and are a part of the association-in-fact and conducted, or participated, directly or indirectly in the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B), 1961(5) and 1962(c), namely: (a) mail and wire fraud in violation of 18 U.S.C. § 1341; (b) wire fraud in violation of 18 U.S.C. § 1343; and (c) false information with regard to the use of, and repayment of the monies.

(*Id.* ¶ 139.)

These predicate act allegations seem to misapprehend the very nature of RICO liability. RICO liability does not attach when an enterprise allegedly commits two or more predicate acts. Only RICO persons can be held liable under RICO. *See* 18 U.S.C.

§ 1962(c) (prohibiting "any *person* employed by or associated with any enterprise . . . [from] conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity" (emphasis added).) As alleged here, Plaintiffs' claims assert that the entire association-in-fact engaged in predicate acts, exemplifying the amended complaint's failure to differentiate between the enterprise and the predicate acts, contrary to the requirements of *Turkette*. These claims further fail to distinguish between the requirement that RICO claims allege a distinct RICO enterprise and RICO persons.

Accordingly, these allegations fail to state which RICO defendant, or RICO person, is alleged to have engaged in which predicate acts, when they occurred, and what they were. As a consequence, even assuming the existence of a RICO enterprise, the amended complaint fails to plausibly plead that any specific Defendant (or RICO person), participated in a pattern of racketeering activity. (*See* Am. Compl., ECF No. 34; *see also* 18 U.S.C. § 1961(5) (defining pattern for purposes of RICO as requiring "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity")). In addition, as discussed above, other than the sole mention of one specific wire transfer discussed above, the amended complaint fails to allege any wires or mailings other than conclusory allegations. Finally, the Court has no understanding of what racketeering activity Plaintiffs are attempting to plead with the inclusion of the following language as a predicate act: "(c) false information with regard to the use of, and repayment of the monies." (Am. Compl., ECF No. 34, ¶ 139.) The only predicate acts that may be included in a RICO claim are those enumerated as racketeering activities by statute. *See* 18 U.S.C. § 1961(1). Plaintiffs' pleading as to this purported act, with no reference to any

23

statute or authority, does not state a valid RICO predicate. For all of these reasons, the amended complaint fails to include a short and plain allegation of a cognizable RICO pattern.[9] *See* Fed. R. Civ. P. 8.

ii. *Plaintiffs Fail to Allege RICO Continuity*

As set forth above, under 18 U.S.C. § 1961(5), a pattern under RICO must allege at least two acts of racketeering activity. The Supreme Court has long held, however, that "while two acts are necessary, they may not be sufficient." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989). Indeed, Plaintiffs must also allege "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *Id.* at 239 (emphasis omitted); *see also, e.g., Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 64 (2020).

"'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241. "A complaint that properly alleges either satisfies the continuity requirement of the pattern element." *Black v. Ganieva*, 619 F. Supp. 3d 309, 346 (S.D.N.Y. 2022), *aff'd*, No. 22-1524-CV, 2023 WL

---

[9] Even if the Court were to overlook these deficiencies with regard to the pattern allegations, questions remain about the adequacy of the mail and wire fraud allegations. As discussed above, there is not a single non-conclusory factual allegation regarding any mailings in the amended complaint. In addition, although the complaint claims that wires were sent interstate, there are no non-conclusory facts that support this assertion. (*See* Am. Compl., ECF No. 34, ¶¶ 1, 111.) In this case, all of the parties are alleged to be New York residents and the principal facts alleged as to how the fraud was perpetrated detail events that appear to have taken place entirely in New York. (*See id.* ¶¶ 3–4, 7, 10, 16–81.) *See, e.g., Clifford v. Hughson*, 992 F. Supp. 661, 668 (S.D.N.Y. 1998) ("Plaintiffs and defendants are all New York residents or corporations and the Third Amended Complaint suggests that each of the alleged acts occurred in New York. Thus, it is unlikely that any of the calls were placed out-of-state. Because plaintiffs do not, and apparently cannot, allege the use of interstate wires, their claims for wire fraud must be dismissed."); *Bernstein v. Misk*, 948 F. Supp. 228, 239 (E.D.N.Y. 1997) ("[W]here all parties are New York residents, all telephone calls are presumed to be intrastate and, absent any indications otherwise, the predicate act of wire fraud is not stated." (quotation marks omitted)).

2317173 (2d Cir. Mar. 2, 2023). The Second Circuit has explained the continuity pleading burden as follows: "a plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time)." *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995).

An "amended complaint [that] alleges only a serious, but discrete and relatively short-lived scheme to defraud a handful of victims, . . . is insufficient to establish open-ended continuity." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 186 (2d Cir. 2008) (quotation marks omitted); *see also Dempsey v. Sanders*, 132 F. Supp. 2d 222, 228 (S.D.N.Y. 2001) ("[C]ourts have held that where a Plaintiff alleges a single scheme promulgated for the limited purpose of defrauding a single victim, continuity cannot be established."). "Typically, courts in the Second Circuit have held that where the conduct at issue involves a limited number of perpetrators and victims and a limited goal, there will be no closed-ended or open-ended pattern." *JGIAP RH 160 LLC,* 2023 WL 5979125, at *10 (collecting cases).

"To allege closed-ended continuity, the adequately pleaded predicate acts must extend over a substantial period of time." *Chester Park View LLC v. Schlesinger*, No. 23-CV-5432 (CS), 2024 WL 2785140, at *8 (S.D.N.Y. May 29, 2024) (quotation marks omitted; collecting cases). Although there is no "bright-line rule" regarding the length of time over which predicates must span, "the Second Circuit generally requires that the predicate acts extend over at least two years to be considered a closed-ended pattern." *Id.* As set forth above, the two promissory notes at issue in the fraud schemes alleged here were signed over a relatively short period of time, namely, between March 2018 and January 2019. (*See* Am. Compl., ECF No. 34, ¶ 18 (alleging that the NYEC Note was

dated March 16, 2018); *id.* ¶¶ 39–44 (indicating that the J Navi Note was executed on January 2, 2019 and that representations about it were made in the days before and after the execution date).) Even taking Plaintiffs' additional allegations regarding other, similar, related schemes into consideration, and assuming *arguendo* that discrete, cognizable predicate of acts of mail or wire fraud were committed in connection with these schemes (which, as discussed above, is not adequately alleged in the amended complaint), the period of time over which Defendant Zhuang is alleged to have signed fraudulent notes was not sufficiently lengthy so as to establish closed-ended continuity. (*See id.* ¶ 56 (stating that Zhuang provided a personal guaranty regarding the "JZ Note" in August 2018).)

The allegations are also insufficient to establish open-ended continuity. As set forth above, the Second Circuit has squarely held that a "discrete and relatively short-lived scheme to defraud a handful of victims" is not sufficient. *Spool*, 520 F.3d at 186. Yet that is precisely what we have here. Plaintiffs have identified a relatively small number of victims and fraudulent schemes. Again, even assuming that specific predicate acts could be alleged to establish a RICO pattern as to these fraud schemes, the amended complaint does not demonstrate "that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999).

d.  Plaintiffs Have Not Alleged Vertical and Horizontal Relatedness

The Supreme Court has long held that, in order to establish RICO liability, the predicate racketeering acts must be both horizontally and vertically related to the enterprise. *See H.J. Inc.*, 492 U.S. at 239; *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017) (observing that "[b]ecause RICO does not apply to isolated or sporadic criminal acts" the predicate acts must be related (quotation marks omitted)). "The relatedness

requirement pertains to the acts' relationship to each other, or 'horizontal relatedness,' and to the enterprise as a whole, or 'vertical relatedness.'" *Black*, 619 F. Supp. 3d at 337 (quotation marks omitted).

With regard to vertical relatedness, the Second Circuit has observed that it may be established by "evidence that the defendant was enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or that the predicate offenses are related to the activities of that enterprise." *United States v. Minicone*, 960 F.2d 1099, 1106 (2d Cir. 1992) (internal quotation marks and emphasis omitted), *as amended on reh'g in part* (Apr. 13, 1992). Horizontal relatedness may be demonstrated by stating, with particularity, acts that "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240. In the context of allegations concerning an association-in-fact, horizontal relatedness can also be established "by linking each act to the enterprise," *Reich*, 858 F.3d at 61.

Here, Plaintiffs' pleadings do not allege sufficient non-conclusory facts from which to infer that there is vertical relatedness, meaning that the members of the enterprise were in a position to commit the alleged predicate acts by virtue of their position in the enterprise. Rather, as discussed above, the allegations regarding the enterprise fail to illustrate any cognizable structure to the enterprise, repeatedly asserting that ACE Capital, the corporate member of the association-in-fact enterprise was Zhuang's alter ego. (*See* Am. Compl., ECF No. 34, ¶¶ 6, 58, 101.) In the absence of facts sufficient to plead an enterprise or identifiable discrete predicate acts, the claim that an individual committed crime through a company or a group does not equate with the proposition that a defendant was able to commit criminal predicate acts "solely

27

by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise," as required to allege vertical relatedness. *Minicone*, 960 F.2d at 1106 (emphasis omitted).

Similarly, in the absence of clear enterprise and predicate act allegations, Plaintiffs have not adequately pleaded horizontal relatedness. Although Plaintiffs have alleged some of the factors necessary under *H.J. Inc.*, including that the two alleged fraud schemes had "the same or similar purposes, results, participants, victims, or methods of commission," there are insufficient non-conclusory allegations explaining how the predicate acts are linked to the *enterprise itself*, not just Defendant Zhuang using ACE Capital. *Reich*, 858 F.3d at 61.

　　3.　*The RICO Conspiracy Claim*

Plaintiffs' failure to properly allege a RICO enterprise and predicate acts necessarily renders the conspiracy claim under 18 U.S.C. § 1962(d) deficient as well. To plead a RICO conspiracy, "a plaintiff must allege the existence of an agreement to violate RICO's substantive provisions." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018) (quotation marks omitted). Here, the alleged conspiracy was an agreement to commit the substantive RICO violation that is insufficiently pled.[10] (Am. Compl., ECF No. 34, ¶ 141 (positing RICO conspiracy claim on the basis of the

---

[10] The descriptions of the predicate acts alleged within the paragraph that references 1962(d) differ somewhat from the predicate acts summary included in the substantive RICO allegations. (*Compare* Am. Compl., ECF No. 34, ¶ 139 (alleging "false information with regard to the use of, and repayment of the monies" as a third RICO predicate), *with id.* ¶ 141 (alleging "false information to the lenders of the Notes in question" as a third RICO predicate).) The differences are immaterial, however, to the Court's conclusion that the predicate acts are deficiently pleaded; neither of these phrases appear in the enumerated list of RICO predicates and thus cannot be used to allege acts under RICO.

substantive RICO allegations).) Defendants cannot allege an agreement to violate RICO's substantive provisions when no such violation has been adequately pleaded.

## B.  State Law Claims

As noted above, Plaintiffs allege many state law claims,[11] including fraud, unjust enrichment, equitable and promissory estoppel, constructive trust and equitable accounting, and prima facie fraud under New York's debtor creditor law.[12] (Am. Compl., ECF No. 34, ¶¶ 145–75.) In the absence of diversity between the parties,

---

[11] The Court also notes, without deciding, that some of Plaintiffs' claims appear to be duplicative. For example, "[a]n unjust enrichment claim is not available [under New York law] where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012); *see also Gov't Emps. Ins. Co. v. Armengol*, No. 20-CV-6052 (RPK) (SJB), 2022 WL 432320, at *7 (E.D.N.Y. Jan. 19, 2022) ("[U]njust enrichment is not always viable when one party unjustly holds property or money of another. Properly understood, the claim protects a plaintiff only in those circumstances where she has no other recourse in tort or contract."), *report and recommendation adopted in relevant part*, 2022 WL 426163 (E.D.N.Y. Feb. 11, 2022). Similarly, Plaintiffs request the imposition of a constructive trust and request an equitable accounting. (Am. Compl., ECF No. 34, ¶¶ 167–70.) However, "New York courts have clarified that '[a]s an equitable remedy, a constructive trust should not be imposed unless it is demonstrated that a legal remedy is inadequate.'" *In re First Cent. Fin. Corp.*, 377 F.3d 209, 215 (2d Cir. 2004) (alteration in original) (quoting *Bertoni v. Catucci*, 498 N.Y.S.2d 902, 905 (App. Div. 3d Dep't 1986)); *see also Shaw v. Empire Stock Transfer Inc.*, 381 F. Supp. 3d 286, 292 (S.D.N.Y. 2019); *Akerson Advert. & Mktg., Inc. v. St. John & Partners Advert. & Pub. Rels., Inc.*, 89 F. Supp. 3d 341, 356 (N.D.N.Y. 2015).

[12] Based on the allegations in the amended complaint, the Court also questions the facial sufficiency of any claims as to which a fiduciary relationship is a prerequisite. Under New York law, to state a claim for a constructive trust, a plaintiff must allege "four elements: '(1) a confidential or fiduciary relation[ship], (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment.'" *Nasso v. Bio Reference Lab'ys, Inc.*, 892 F. Supp. 2d 439, 451 (E.D.N.Y. 2012) (quotation marks omitted). Similarly, to request an equitable accounting, a plaintiff must allege: "'(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal.'" *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009) (quoting *Pressman v. Est. of Steinvorth*, 860 F. Supp. 171, 179 (S.D.N.Y. 1994)); *see also Soley v. Wasserman*, 639 F. App'x 670, 674 (2d Cir. 2016) ("New York law clearly requires that a principal demonstrate the unavailability of an 'adequate remedy at law' in order to prevail on a claim for an equitable accounting, *in addition* to establishing the existence of a fiduciary relationship." (emphasis in original)); *Nasso*, 892 F. Supp. 2d at 453 (summarizing the elements of a claim for an equitable accounting under New York law as "(1) a relationship of a fiduciary or confidential nature; (2) money or property entrusted to the defendant imposing upon him the burden of accounting; (3) the absence of an adequate legal remedy; and (4), in some cases, a demand for an accounting and a refusal").

Plaintiffs' RICO claims are the sole basis for federal jurisdiction. Given the Court's recommendation that those claims be dismissed, the Court also recommends dismissal of Plaintiffs' state law claims in their entirety. *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) (stating that when "a federal court dismisses all claims over which it had original jurisdiction, it must reassess its jurisdiction over the case").

Where a "district court has dismissed all claims over which it has original jurisdiction," the court in its discretion "may decline to exercise supplemental jurisdiction" over the remaining state law claims. 28 U.S.C. § 1367(c). This decision is guided by the *Cohill* factors: "judicial economy, convenience, fairness, and comity." *Uzan*, 388 F.3d at 56; *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "[A]s a general proposition," however, "'if [all] federal claims are dismissed before trial . . . , the state claims should be dismissed as well.'" *Uzan*, 388 F.3d at 56 (emphasis omitted) (quoting *Castellano v. Bd. of Trs.*, 937 F.2d 752, 758 (2d Cir. 1991)); *see also Cohill*, 484 U.S. at 350 n.7 (observing that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors" will ordinarily "point toward declining to exercise jurisdiction over the remaining state-law claims"). This includes instances where, as here, the jurisdiction-invoking claims are dismissed on a timely Rule 12(b)(6) motion. *See, e.g., Turner v. N.Y. Rosbruch/Harnik, Inc.*, 84 F. Supp. 3d 161, 170–71 (E.D.N.Y. 2015); *Camhi v. Glen Cove City Sch. Dist.*, 920 F. Supp. 2d 306, 312–13 (E.D.N.Y. 2013); *Johnson v. Levy*, 812 F. Supp. 2d 167, 184–85 (E.D.N.Y. 2011).

In this case, the *Cohill* factors weigh heavily in favor of declining to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. Although the case has been pending for some time due to the motion to vacate the default and motion to dismiss practice, discovery has not commenced, and the case is in its early stages. Relatively speaking, this is not a case where "dismissal of the federal claim occurs late

in the action, after there has been substantial expenditure in time, effort, and money."
*Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) (quotation omitted). In addition, since
there has been no federal discovery and all claims would be dismissed before trial, "the
state claims should be dismissed." *Uzan*, 388 F.3d at 56 (quotation marks and emphasis
omitted).

## CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends that
Defendants' motion to dismiss be granted in its entirety. In light of Plaintiffs' recent
substitution of counsel, the Court additionally recommends that Plaintiffs be granted
leave to file a motion to amend the complaint.

*    *    *    *    *

Any objections to this Report and Recommendation must be filed with the Clerk
of the Court within fourteen days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see
also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file
objections within the specified time waives the right to appeal the District Court's order.
*See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that
"failure to object timely to a . . . report [and recommendation] operates as a waiver of
any further judicial review of the magistrate[ judge's] decision" (quotation marks
omitted).).

**SO ORDERED.**

Dated:    Brooklyn, New York
          August 8, 2024

                              *Taryn A. Merkl*
                              _____
                              TARYN A. MERKL
                              UNITED STATES MAGISTRATE JUDGE